UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20300-RAR

**CHRISTOPHER J. MADAIO**,

    Plaintiff,

v.

**UNITED STATES OF AMERICA**, *et al.*,

    Defendants.
_____/

## SCREENING ORDER

**THIS CAUSE** comes before the Court on Plaintiff Christopher J. Madaio's *pro se* "Civil Action With Respect to Violations of the Privacy Protection Act of 1980," [ECF No. 1]. Plaintiff, who is presently confined at the Federal Detention Center in Miami, Florida, principally alleges that Defendants violated his rights as a "publisher and published photographer" by seizing his "work product materials" and "other documents" during a July 11, 2024 search and seizure at Miami International Airport. *Id.* at 1. He also asserts that Defendants "violate[d] [his] civil rights . . . by denying him access . . . to pretrial bond" in his federal criminal case "arising from the indiscriminate seizure of the same materials[.]" *Id.* (cleaned up). For the reasons below, the Court finds that Plaintiff's claims against the United States of America under 42 U.S.C. § 2000aa shall **PROCEED** to service, and his remaining claims must be **DISMISSED without prejudice**.

## BACKGROUND

Plaintiff is a photographer by trade, with over fifty years behind the lens. *See* Compl. at 4. He has enjoyed earnings from a nearly thirty-year-old original photobook titled, "Il Ritrato Giovanile," as well as international recognition from articles and numerous photo exhibitions. *Id.*

But Plaintiff's love for photography became a liability when, in 2004, the Federal Bureau of Investigation ("FBI") discovered 691 images classified as child pornography on his personal computers.  *See Madaio v. Fed. Bureau of Investigation*, No. CV-06-BE-00904, 2008 WL 11392887, at *2 (N.D. Ala. Mar. 31, 2008).  In 2006, Plaintiff pled guilty to possessing and knowingly receiving material containing images of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(a)(2)(A), and was sentenced to 60 months' imprisonment.  *See id.*

Eighteen years later, Plaintiff found himself in financial straits.  *See* Compl. at 5.  In March 2024, Plaintiff was contacted by a businessman, Brandon Bello, who "offered to purchase exclusive rights to all" of Plaintiff's photos "with the intent of publishing two photobooks[.]"  *Id.*  After several weeks, Plaintiff and Mr. Bello "came to a contractual agreement," in which they agreed that Plaintiff would: (1) deliver "all his personal/scanned photos [] taken over the past [fifty-five] years to Mr. Bello" to facilitate a "final selection of photos" and a "suitable layout of the two photobooks"; and (2) "work for an indeterminate time as an engineer at Mr. Bello's biofuel plant near Yopal, Colombia."  *Id.*  (cleaned up).

Plaintiff left for Colombia with his photographs and contractual information on a separate flash drive.  *See id.*  But when he arrived at the Bogota Airport, Plaintiff "was denied entry to Colombia" and "immediately returned on the next available flight to Miami International Airport" in the United States.  *Id.*  On July 11, 2024, officials for the Department of Homeland Security ("DHS") "proceeded to seize indiscriminately all of [Plaintiff]'s digital media," including those materials necessary to fulfill his contractual obligations with Mr. Bello.  *Id.*  As a result, a grand jury in this District charged Plaintiff with one count of knowingly transporting any visual depiction involving the use of a minor engaged in sexually explicit conduct, and one count of knowingly possessing any visual depiction involving the use of a "prepubescent minor" engaged in sexually

explicit conduct, in violation of 18 U.S.C. §§§§ 2252(a)(1), (a)(4)(B), (b)(1), and (b)(2). Indictment, *United States v. Madaio*, No. 24-cr-20445 (S.D. Fla. Oct. 3, 2024), ECF No. 6 at 1–2.

Plaintiff has been detained ever since.[1]  *See* Compl. at 7.  Yet, as relevant here, Plaintiff says that the Government seized materials "intended for publication" that were "clearly marked in a separate folder" and would not be considered by a reasonable person as constituting child pornography.  *Id.* at 8.  He avers that, to date, the Government continues "to hold all seized materials," which has prevented Plaintiff from publishing his anticipated photobooks.  *Id.*  Plaintiff thus filed the instant action principally under the Privacy Protection Act, 42 U.S.C. § 2000aa, seeking compensatory and punitive damages for the "excessively malicious actions by the Defendants[.]" *Id.* at 9.

## LEGAL STANDARD

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added).  The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* § 1915A(c).  In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint[] or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).  Similarly, if a plaintiff wishes to proceed *in forma pauperis* rather than prepaying the filing fee, § 1915(e)(2) requires the court to "dismiss [a] case *at any time* if the court determines that . . . the action" fails for the same enumerated reasons articulated under § 1915A. *Id.* § 1915(e)(2)(B) (emphasis added).

---

[1]  Plaintiff was ultimately convicted by a jury on both counts in the Indictment. *See* Jury Verdict, *United States v. Madaio*, No. 24-cr-20445 (S.D. Fla. Apr. 8, 2025), ECF No. 70.

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

Although the Court must hold the allegations in a *pro se* civil rights complaint "to a less stringent standard than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *pro se* litigants are still required to comply with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida, *see Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[A *pro se* litigant] is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."); *see also* S.D. FLA. L.R. 1.1 (explaining that the Local Rules apply in all proceedings unless otherwise indicated and that the word "counsel" shall apply to a party that is proceeding *pro se*). The Federal Rules of Civil Procedure require, in pertinent part, that a pleading that states a claim for relief contain "a short and plain statement of the grounds for a court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought[.]" FED. R. CIV. P. 8(a). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[,]" and "each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." *Id.* 10(b).

## ANALYSIS

Plaintiff sues five Defendants in their individual and official capacities—the United States of America, Department of Homeland Security ("DHS") Agent Kenny Silva, Assistant United States Attorney Angela Benoit, FDC Miami Warden Serrano, and "Unnamed Defendants." Compl. at 1. Plaintiff briefly alleges that several Defendants violated his rights by denying him access to a pretrial bond. *See id.* That aside, Plaintiff's central claim falls under the Privacy Protection Act, 42 U.S.C. § 2000aa *et seq. See generally id.* The Court will address his claims in turn.

### I. Plaintiff Fails to State a Claim Against Defendants Benoit and Serrano

Plaintiff has sued "Serrano," the Warden at FDC Miami, and Angela Benoit, the lead prosecutor in his federal criminal case, presumably alleging that they unlawfully kept him detained without bond. *See* Compl. at 1. These Defendants are due to be dismissed for two reasons. *First*, to the extent Plaintiff is seeking release, this type of relief is unavailable in a civil-rights action. *See Preiser v. Rodriguez*, 411 U.S. 475, 488 (1973) (holding that inmates may not obtain release from custody or attack the fact or length of confinement in a civil-rights lawsuit). *Second*, Plaintiff proffers <u>no facts</u> connecting these individual Defendants to any constitutional or statutory violation. *See generally* Compl. He has thus failed to establish any affirmative causal connection between these Defendants' actions and Plaintiff's alleged injuries. *See Brewer v. Morgan*, No. 16-CV-457, 2016 WL 6987034, at *2 (N.D. Fla. Oct. 27, 2016) ("[L]isting defendants at the beginning of a complaint is not sufficient to name them in an action without alleging facts as to what each defendant did or did not do that gives rise to the claim." (alteration added)), *report and recommendation adopted*, 2016 WL 6986703 (N.D. Fla. Nov. 28, 2016). Accordingly, the Court hereby **DISMISSES** Defendants Angela Benoit and Warden Serrano as parties to this action.

## II. Plaintiff Fails to State a Claim Against Unnamed Defendants

Next, Plaintiff cannot sue fictitious "Unnamed Defendants." Compl. at 1. "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). However, "[t]here may be times when, for one reason or another, the plaintiff is unwilling or unable to use a party's real name." *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (alterations added). The Eleventh Circuit has thus carved out an exception to this principle when a plaintiff's description of a fictitiously named defendant is "sufficiently clear to allow service of process." *Id.* at 1216. But Plaintiff has hardly satisfied this exception, since the Complaint contains virtually zero description of the identities, badge numbers, employer(s), or locations of these "Unnamed Defendants." The Court will therefore **DISMISS** all claims against them.

## III. Plaintiff's Claims Under the Privacy Protection Act

Lastly, the Court will address Plaintiff's central claim against the two remaining Defendants, DHS Agent Kenny Silva and the United States of America. As explained below, the Court concludes that Plaintiff, at least for now, has stated a claim upon which relief can be granted against the United States.

### A. *The Privacy Protection Act of 1980, 42 U.S.C. § 2000aa*

The Privacy Protection Act of 1980 ("PPA" or "the Act") generally prohibits government officials from searching for and seizing certain materials possessed by a person reasonably believed to have a purpose to disseminate information to the public. *See* 42 U.S.C. § 2000aa; *see also Citicasters v. McCaskill*, 89 F.3d 1350, 1353 (8th Cir. 1996). The Act's central purpose was to fortify First Amendment protection for publication materials during the execution of a search or seizure, investigation, or prosecution of a criminal offense. *See Times Publ'g Co. v. United States*,

No. 23-MC-0014, 2023 WL 7411463, at *5 (M.D. Fla. Sept. 22, 2023); *see also Madaio v. Fed. Bureau of Investigation*, No. CV-06-BE-00904, 2008 WL 11392887, at *6 (N.D. Ala. Mar. 31, 2008) ("The [PPA] was intended to discourage law enforcement officers from targeting publishers simply because they often gathered 'mere evidence' of crime." (alteration added)).  The PPA creates a civil cause of action for damages arising from such searches or seizures against the United States; a State which has waived its sovereign immunity to a claim for damages resulting from a violation of the PPA; "any other government unit"; and an officer or employee of a State while acting within the scope or color of his office or employment, provided the State has not waived its sovereign immunity.  42 U.S.C. § 2000aa-6(a)(1)–(2).

The PPA specifically affords protection for both "work product materials" and "documentary materials," providing as follows:

> (a) Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce[.]
>
> (b) Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize documentary materials, other than work product materials, possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce[.]

42 U.S.C. § 2000aa(a)–(b) (alterations added).

The PPA defines "work product materials" in part as materials that are "prepared, produced, authored, or created" "in anticipation of communicating such materials to the public," or are "possessed for the purposes of communicating such materials to the public," and which may "include mental impressions, conclusions, opinions, or theories of the person who prepared,

produced, authored, or created such material." *Id.* § 2000aa-7(b). "Documentary materials" under the Act include "written or printed materials, photographs, motion picture films, negatives, video tapes, audio tapes, and other mechanically, magnetically or electronically recorded cards, tapes, or discs[.]" *Id.* § 2000aa-7(a) (alteration added). However, the Act's definitions for "work product materials" and "documentary materials" both exclude "contraband or the fruits of a crime or things otherwise criminally possessed." *Id.* § 2000aa-7.

Based on this statutory framework, the Court distills the following three elements necessary to state a plausible claim under § 2000aa: (1) a government officer or employee, in connection with a criminal investigation or prosecution, searched for or seized (2) <u>either</u> work product materials possessed by a person reasonably believed to have <u>or</u> documentary materials possessed by person in connection with (3) a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce. *See* 42 U.S.C. § 2000aa(a)–(b).

There are certain statutory exceptions and defenses by which law enforcement can avoid liability under the Act. Under the "suspect exception," "[t]he police can avoid the constraints of the [A]ct . . . when the person possessing the materials is a criminal suspect rather than an innocent third party." *Guest v. Leis*, 255 F.3d 325, 341 (6th Cir. 2001) (alterations added). To satisfy this exception, the government must have "probable cause to believe that the person possessing such materials has committed or is committing the criminal offense *to which the materials relate*." §§ 2000aa(a)(1), (b)(1) (emphasis added). This exception contains its own caveat, such that even where the materials relate to the criminal offense, an officer nevertheless "may <u>not</u> search for or seize such materials . . . if the offense to which the materials relate consists of the receipt, possession, communication, or withholding of such materials or the information contained

therein." §§ 2000aa(a)(1), (b)(1) (emphasis added).  This caveat is inapplicable where the offense falls under any one of the statutorily listed offense categories, such as "national defense," "classified information," or "the sexual exploitation of children," §§ 2000aa(a)(1), (b)(1)— meaning that an officer can search for and seize the subject materials provided they satisfy the suspect exception.[2]

A search or seizure is also permitted when "there is reason to believe that the immediate seizure of such materials is necessary to prevent the death of, or serious bodily injury to, a human being." §§ 2000aa(a)(2), (b)(2).  Additionally, and as relevant here, the Act contains a sweeping "border exception," providing that "[t]his chapter shall not impair or affect the ability of a government officer or employee . . . to conduct searches and seizures at the borders of, or at international points of, entry into the United States in order to enforce the customs laws of the United States." § 2000aa-5 (alterations added).

With these standards in mind, the Court turns to Plaintiff's allegations.

### B. *Plaintiff Fails to State a Claim Against Defendant DHS Agent Kenny Silva*

As an initial matter, it does not appear that Plaintiff can sue DHS Agent Kenny Silva.  As the Court has explained, the PPA only permits suit (1) "against the United States"; (2) "against a State which has waived its sovereign immunity under the Constitution to a claim for damages resulting from a violation of this chapter"; (3) "against any other government unit"; and (4) "against an officer or employee of a State . . . while acting within the scope or color of his office

---

[2] The seizure of documentary materials other than work product materials comes with two additional statutory exceptions.  *See* 42 U.S.C. § 2000aa(b)(3)–(4) (permitting a search or seizure of documentary materials when "there is reason to believe that the giving of notice pursuant to a subpoena duces tecum would result in the destruction, alteration, or concealment of such materials"; or "such materials have not been produced in response to a court order directing compliance with a subpoena duces tecum," where "all appellate remedies have been exhausted" or "there is reason to believe that the delay in an investigation or trial occasioned by further proceedings relating the subpoena would threaten the interests of justice").

or employment, if such State has not waived its sovereign immunity[.]" 42 U.S.C. § 2000aa-6(a)(1)–(2) (alterations added). None of these categories apply to DHS Agent Silva, who is demonstrably an individual officer or employee of the United States. Accordingly, the Court will **TERMINATE** Defendant DHS Agent Kenny Silva as a Defendant to this action.

### C. *Plaintiff Has Stated a Claim Against Defendant United States of America*

For now, the Court finds that Plaintiff sufficiently pleads each element of the PPA and therefore states a plausible claim for relief against the United States. *First*, Plaintiff has alleged that a government officer or employee conducted a search or seizure connected to a criminal investigation. Specifically, he proffers that DHS Agent Kenny Silva was acting within the scope or under color of his office or employment as an "agent and investigator for the [DHS],"[3] and Agent Silva's "primary responsibility" was "the search and seizure of all Plaintiff's digital media at Miami International Airport" and the "forensic analysis of same," resulting in Plaintiff's indictment and detention in his related criminal case. Compl. at 2 (alteration added).

*Second*, Plaintiff's seized materials satisfy the meaning of "documentary materials" under the Act. He avers that DHS agents seized his "digital media, including those necessary" to fulfill his contractual obligations to Mr. Bello. Compl. at 6. This "digital media" included "all his personal/scanned photos[] taken over the past 55 years," *id*. (alteration added), which plainly comports with the Act's definition of "documentary materials," which include "photographs," 42 U.S.C. § 2000aa-7(a). Further, since Plaintiff contends that "none of the images intended for

---

[3] For this reason, Plaintiff has properly sued the United States of America. The PPA explicitly states that "a person aggrieved by a search for or seizure of materials in violation of this chapter shall have a civil cause of action for damages for such search or seizure . . . against the United States[,] which shall be liable for violations of this chapter by their officers or employees while acting within the scope or under color of their office or employment[.]" 42 U.S.C. § 2000aa-6(a)(1) (alterations added). And the United States "may not assert as a defense to a claim arising under this chapter the immunity of the officer or employee whose violation is complained of or his reasonable good faith belief in the lawfulness of his conduct[.]" *Id*. § 2000aa-6(c) (alteration added).

publication," which were "clearly marked in a separate folder[,] would be considered by a reasonable person to be child pornography," Compl. at 8 (alteration added), he has averred that the seized materials do not constitute "contraband or the fruits of a crime or things otherwise criminally possessed," 42 U.S.C. § 2000aa-7.

*Third*, Plaintiff possessed such documentary materials "in connection with a purpose to disseminate to the public a . . . book . . . or other similar form of public communication, in or affecting interstate or foreign commerce[.]" 42 U.S.C. § 2000aa(b) (alterations added). This is evident from Plaintiff's allegations that he and Mr. Bello intended to incorporate such digital media into a photobook for publication. *See* Compl. at 6. Accordingly, Plaintiff has stated a plausible claim for relief under the PPA.

Moving on, Plaintiff attempts to overcome two of the PPA's exceptions to liability. For instance, Plaintiff alleges that the images do not trigger the suspect exception because the seized digital media was "clearly marked in a separate folder" and plainly did not constitute child pornography, meaning that Plaintiff's materials did not relate to the criminal offense underlying any probable cause for the seizure. Compl. at 8; *see also* §§ 2000aa(a)(1), (b)(1). Moreover, Plaintiff insists that the PPA's border exception does not apply in his case. *See* 42 U.S.C. § 2000aa-5. Ordinarily, the PPA will not restrain the actions of officers who conduct searches and seizures at international points of entry into the United States to enforce customs laws. *See id.* But Plaintiff alleges that officers "maneuver[ed] [] Plaintiff into a position at Miami International where a search and seizure was unavoidable." Compl. at 7 (cleaned up). By "rerouting" Plaintiff to Miami International Airport, he avers that Defendants "intentionally and maliciously" forced him "into a

situation . . . where he would be deprived of the protections afforded to him under the [Fourth] Amendment[.]" *Id.* at 7–8 (cleaned up).[4]

Due to the PPA's infrequent application, existing judicial precedent offers little to no guidance on how to resolve these remaining issues without further briefing. It is also unclear whether Plaintiff must advance allegations under any of the PPA's exceptions to state a plausible claim for relief under the statute. The Eleventh Circuit has emphasized that courts "should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel" or presents issues of first impression. *Moore v. Ga. Bd. of Pardons & Paroles*, No. 23-12468, 2024 WL 1765706, at *3 (11th Cir. Apr. 24, 2024) (cleaned up); *cf. Shull v. Pilot Life Ins. Co.*, 313 F.2d 445, 447 (5th Cir. 1963) ("It is perhaps ironic that the more extreme or even far-fetched is the asserted theory of liability, the more important it is that the conceptual legal theories be explored and assayed in the light of actual facts, not a pleader's supposition."). Thus, the Court will permit Plaintiff to proceed to service of process on his PPA claim against the United States.

---

[4] Notably, Plaintiff is not challenging the reasonableness of the subject search and seizure under the Fourth Amendment's contours. Rather, Plaintiff—upon a liberal construction of his allegations—challenges the applicability of the PPA's border exception. Plaintiff's allegations that he was intentionally maneuvered by government officials into an international port of entry suggests that agents intended to pursue a law enforcement objective with the benefit of the border's substantially relaxed restrictions under the Fourth Amendment. *See* Compl. at 7. Plaintiff essentially argues that these circumstances were not contemplated under § 2000aa-5. Whether § 2000aa-5's reference to border searches is read coextensively with the range of border searches permitted under the Fourth Amendment is a matter of first impression. However, Plaintiff's interpretation of § 2000aa-5 is at least colorable and not foreclosed by any existing caselaw; at this juncture, therefore, the Court expresses no opinion on the exception's applicability to Plaintiff's case or how it affects the plausibility of his claims.

Further, the commingling of Plaintiff's digital media with criminal evidence, and how such circumstances may foreclose liability under the Act, is a developing issue among courts. Plaintiff alleges that DHS agents seized his digital media, which Plaintiff appears to have kept in a "flash drive" on his way to Colombia. Compl. at 6. One circuit court has determined that liability will not attach where PPA-protected materials are "commingled . . . with criminal evidence that is unprotected by the act[.]" *Guest v. Leis*, 255 F.3d 325, 342 (6th Cir. 2001). However, due to the novelty of *Guest*'s holding and the limited attention it has received by courts, the Court again expresses no opinion on how this issue may affect the plausibility of Plaintiff's claims going forward.

**CONCLUSION**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Christopher J. Madaio's claim against Defendant United States of America under 42 U.S.C. § 2000aa, [ECF No. 1], may **PROCEED** to service of process. All remaining claims are **DISMISSED without prejudice**.

2. Defendants DHS Agent Kenny Silva, Angela Benoit, Warden Serrano and "Unnamed Defendants" are **TERMINATED** as parties to this action.

3. Since Plaintiff is not proceeding *in forma pauperis* in this action, the Federal Rules of Civil Procedure require him to serve the United States with a copy of the summons and the Complaint. *See* FED. R. CIV. P. 4(c)(1) ("The plaintiff is responsible for having the summons and complaint served[.]" (alteration added)); *see also id.* 4(i) (directing the manner in which a plaintiff must serve the United States). At Plaintiff's request, the Court "may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." *Id.* 4(c)(3). The deadline for service of process in this case is **August 11, 2025**.

4. This case shall remain **administratively closed**.

**DONE AND ORDERED** in Miami, Florida, this 13th day of May, 2025.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc: Christopher J. Madaio
　　25435-001
　　Miami FDC
　　Federal Detention Center
　　Inmate Mail/Parcels
　　Post Office Box 019120
　　Miami, FL 33101
　　PRO SE